## THOMAS C. ROWE *vs.* EZRA NALLY.

*Easements and Servitudes—Sufficiency of Declaration.*

A declaration set forth that the defendant was the owner of a narrow strip of land extending from his property to a public road, the same being used by him as a way; that plaintiff owned the land on both sides of said strip, and was entitled to have a gate maintained by the defendant at the public road where defendant's strip of land ended; but that the defendant removed the gate therefrom. *Held,* upon demurrer, that the declaration did not set forth a good cause of action, there being no allegation of any contract or deed by which defendant was bound either himself to maintain a gate at that point, or to allow the plaintiff to maintain one on defendant's land; and there being no allegation of a prescriptive right.

The owner of a tract of land may convey a portion of it, and in the deed may retain an easement therein, for the benefit of the undisposed of part; or he may convey to his grantee an easement in the land which he retains.   But these easements do not compel the owner of the land subject to them to perform work or service.   It is the nature of a servitude not to constrain the owner of the servient tenement to do anything, but to restrain him from doing, or to compel him to suffer something to be done upon his property.

Appeal from the Circuit Court for Washington County. The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, ROBERTS and BOYD, JJ.

*Norman B. Scott, Jr.,* and *Charles D. Wagaman* (with whom was *Alexander Armstrong* on the brief), for the appellant.

*J. Clarence Lane* (with whom was *J. M. Keedy* on the brief), for the appellee.

BRYAN, J., delivered the opinion of the Court.

The question in this case is presented by a demurrer which was filed to a declaration in the Court below. The demurrer was sustained, and the plaintiff has appealed to this Court.

The declaration originally contained three counts; but the first one having been abandoned, the case rests entirely on the other two. It will be necessary to examine the pleadings carefully. In the second count it is averred in substance that the defendant was the owner and possessor of a tract of land in Washington County, and that he also owned and possessed a strip of land, one perch in width, which extended southwardly from this tract to a public road; and that this strip was used by him as a roadway to said public road. It was also averred that the plaintiff owned and possessed land lying and bounding on each side of this strip, and that by reason of said ownership and possession and for the protection of his land, he was entitled to have a gate maintained at the public road at the terminus of the strip. It was further averred that the defendant, disregarding his rights in the premises at divers dates and times, demolished and removed the gate. The statement of the alleged right of the plaintiff is somewhat vague and obscure. It may mean a right to have the gate maintained by the defendant, or it may mean that the plaintiff has a right to maintain it for himself at his own expense. We shall consider the question in both aspects. The declaration does not state that the defendant made a contract with the plaintiff that he would maintain the gate on his own land, or permit it to be maintained by the plaintiff. But it sets up a claim to this privilege by reason of the possession and ownership of contiguous land. It is sought for this reason to impose a burden on the defendant's land; this bare, naked, unqualified ownership and possession is the title which is alleged to confer a right in and control over adjoin-

ing land. In the classification of the objects of property an interest of this kind is called an easement or a servitude; in the present case it would be an easement appurtenant to the plaintiff's land. In *Baltimore, &c., Railroad* v. *Algire*, 63 Md. 323, it was said that as a general rule an interest or easement in land must be acquired in the mode provided for the transfer of real estate. And in the common law treatises it is said that it cannot be acquired, except by grant or prescription, which pre-supposes a grant. *Gale on Easements*, m. p. 18 and 86; *Washburn on Easement, &c.*, m. p. 18. There are two very usual methods of creating an easement or imposing a servitude on land. The owner of a tract of land may convey a portion of it, and in the deed of conveyance may retain an easement in it for the benefit of the portion which he does not dispose of; or he may in the deed convey to his grantee an easement in the land which he retains in his possession. These easements are appurtenant to the land, and pass with it to successive grantees. But they do not compel the owner of the land subject to them to perform work or service; such, for instance, as to maintain a gate. On this point the authorities are decided. We will quote a passage from *Washburn* (m. p. 4 and 5): "It is the nature of servitudes not to constrain any one to do, but to suffer something, *ut aliquid patiatur aut non faciat.*" "Hence," says Mr. Erskine, "it may be perceived that he whose tenement may be subject to a servitude, is not, in the common case, bound to perform any act for the benefit of the person or tenement to which it is due. His whole burden consists either in being restrained from doing or in being obliged to suffer something to be done upon his property by another. In the first case, in which the proprietor is barely restrained from acting, the servitude is called negative, in the last positive." And we must bear in mind that although a covenant imposes merely a personal obligation on the covenantor, yet an instrument having the form of a covenant may in legal effect be a grant, if its terms evince that such is the intention of the

parties. Let us make an extract from *Gale on Easements*, m. p. 47: "The better opinion being, that the burden of covenants does not run with the land so as to bind an assignee, except in cases between landlord and tenant, it becomes important to determine in each case whether the terms of the covenant are such as to create a grant of an easement, in which case the effect of them is to create an incorporeal hereditament, giving the successive owners of it a right as against all the succeeding owners of the land affected by it, without regard to any question as to burden of covenants running with land." It would be unprofitable to consider in detail other modes by which an easement may be created and acquired. In all cases it must be derived from some one who has an estate in the land commensurate with the burden imposed. We see nothing in the second count which shows a title to the easement claimed. There is no allusion to a grant, express or implied, and no averment of adverse and continuous user for the period of prescription, nor is any other fact averred which in any way tends to show a prescriptive right.

The third count is similar to the second in the nature and character of the facts from which the easement is alleged to arise. The averments are slightly varied, but not in any material respect. After stating the ownership and possession of the strip of land by the defendant, and the use of it as a road from his other land to the public road, it stated that it was "*used also by the plaintiff at the terminus of said highway to reach the lands of the plaintiff lying adjacent to said road or way as aforesaid, and the said road or way for the protection of the lands of the plaintiff and for the purpose of the user aforesaid,*" and by reason of his ownership and possession of his lands was enclosed from the public road by a gate; and that the plaintiff was entitled to have the gate maintained at the terminus of the strip of land at the public road; and that the defendant damaged, removed and tore it down. We think that what we have said in ex-

amining the second count, is sufficient to show our opinion
on the sufficiency of the third.    The judgment must be
affirmed.

*Judgment affirmed.*

(Decided June 18th, 1895.)